# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 05-39712 HRT** |
| NATHAN E. LUJAN | ) | |
|  | ) | |
| Debtor(s). | ) | |
| _____ | ) | **CHAPTER 7** |
| WILSHIRE CREDIT CORPORATION AS | ) | |
| SERVICER FOR THE BANK OF NEW | ) | |
| YORK, AS SUCCESSOR TRUSTEE TO | ) | |
| JPMORGAN CHASE BANK, NATIONAL | ) | |
| ASSOCIATION, FKA JPMORGAN CHASE | ) | |
| BANK, AS ORIGINAL TRUSTEE FOR THE | ) | |
| HOME EQUITY TRUST SERIES 2004-4, | ) | |
|  | ) | |
| Movant, | ) | |
| vs. | ) | |
|  | ) | |
| NATHAN E. LUJAN | ) | |
| and | ) | |
| Simon E. Rodriguez, Chapter 7 Trustee, | ) | |
|  | ) | |
| Respondents. | ) | |

## <u>MOTION FOR RELIEF FROM STAY</u>

COMES NOW **WILSHIRE CREDIT CORPORATION AS SERVICER FOR THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, FKA JPMORGAN CHASE BANK, AS ORIGINAL TRUSTEE FOR THE HOME EQUITY TRUST SERIES 2004-4,** ("Movant"), a Creditor in the above-captioned matter, by and through its attorney, Heather Deere, and respectfully represents:

     1.    That the Debtor(s) is/are indebted to Movant for which Movant claims a valid lien or security interest in the following described property:

PARCEL 3, RESUBDIVISION OF LOT 18, BLOCK 3, KAIBAB PARK, ACCORDING TO THE PLAT RECORDED JUNE 13, 1985 IN BOOK 417 AT PAGE 180, COUNTY OF EAGLE, STATE OF COLORADO

Purported common address: 491 WHITING ROAD, EAGLE, CO 81631

     2.    That this lien or security interest arose from a Promissory Note and Deed of Trust, true and legible copies of which are attached hereto and incorporated herein by reference as Deed

of Trust and Note, respectively.  The Promissory Note and Deed of Trust have been assigned to Movant.

      3.      Notice of security interest was given by:

| Deed of Trust dated: | 4/14/2004 |
|---|---|
| Place of recording: | Eagle County |
| Date of recording: | 4/19/2004 |
| Recording information: | Reception No. 874115 |

      4.      That the approximate amount due Movant on account of said indebtedness through the date of the filing of this motion is $27,863.00.

      5.      That the Debtor(s) is/are in default in the performance of the terms and conditions of said Note and Deed of Trust and, therefore, the amount stated in paragraph 4 above is now due and owing to Movant and Movant is lawfully entitled to possession of the above-described property.

      6.      That enforcement of this security interest has been stayed automatically by operation of 11 U.S.C. §362 of the Bankruptcy Code; however, Movant is entitled to relief from such stay.

      7.      That Movant is entitled to relief from stay under 11 U.S.C. §362(d)(2) for the following reasons:

      a.      That the Debtor(s) does/do not have any equity in such property.  That the value of the subject real property as listed in the Debtor's Schedule A is $229,520.00 which is less than the combined value of Movant's lien in the amount of $27,863.00 plus a senior lien in the approximate amount of $215,730.00; and

      b.      Said property is not necessary for an effective reorganization which constitutes sufficient grounds for annulment of the stay pursuant to 11 U.S.C. §362(d)(2).

      8.      That cause exists to grant relief from stay pursuant to 11 U.S.C. §362(d)(1) as the Debtor(s) has/have failed to make 3 monthly payments as required and the loan is due for October 1, 2007 and this default continues to the present time.  Said failure indicates that the Debtor(s) will be unable to sustain future payments.  Consequently, escrow payments have not been made during the default, and Movant lacks adequate protection of its collateral.

      9.      That the above-described property is burdensome or of inconsequential value and benefit to the estate which constitutes sufficient grounds for abandonment of such property.

10.     In the event no response is filed to this motion, Movant requests that the court waive the ten (10) day stay period pursuant to Rule 4001(a)(3) of the Federal Rule of Bankruptcy Procedure, as no appeal time is necessary.

11.     That the Debtor received his Chapter 7 discharge order on February 9, 2006. Pursuant to 11 U.S.C. §362 (c)(2)(C), the automatic stay of 11 U.S.C. §362 (a) terminates as to the Debtor upon the entry of the discharge order.  Further, this case has been open since October 6, 2005 with no activity in the case since November 21, 2006-over a year.

WHEREFORE, Movant, WILSHIRE CREDIT CORPORATION AS SERVICER FOR THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, FKA JPMORGAN CHASE BANK, AS ORIGINAL TRUSTEE FOR THE HOME EQUITY TRUST SERIES 2004-4, requests the Court to enter an Order granting Movant relief from stay with reference to the property of the estate located at 491 WHITING ROAD, EAGLE, CO 81631 by annulling and/or terminating the automatic stay pursuant to 11 U.S.C. §362(d), and for such other and further relief as this Court may deem just and proper.

Dated:  12/18/2007

Respectfully submitted,

LAW OFFICE OF MICHAEL P. MEDVED, P.C.


By  /s/ Heather L Deere_____
 Heather L. Deere, #28597
355 Union Blvd., Suite 302
Lakewood, CO 80228
(303) 274-0155

ATTORNEY FOR MOVANT:
WILSHIRE CREDIT CORPORATION AS SERVICER
FOR THE BANK OF NEW YORK, AS SUCCESSOR
TRUSTEE TO JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, FKA JPMORGAN CHASE BANK, AS
ORIGINAL TRUSTEE FOR THE HOME EQUITY
TRUST SERIES 2004-4

07-053-07464

## AFFIDAVIT OF MILITARY SERVICE

COMES NOW, Heather L. Deere, as representative for WILSHIRE CREDIT CORPORATION AS SERVICER FOR THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, FKA JPMORGAN CHASE BANK, AS ORIGINAL TRUSTEE FOR THE HOME EQUITY TRUST SERIES 2004-4, and in accordance with the Servicemembers Civil Relief Act of 2003 ("SCRA"), 50 App. U.S.C. §501 et. seq., hereby declares, after being duly sworn, that pursuant to §521(b)(1) and (4), in support of this Affidavit, I conducted a search of the Department of Defense Manpower Data Center for the military status of NATHAN E. LUJAN, the Debtor(s) in Case No. **05-39712 HRT**, on December 18, 2007.  The search indicated that there was no information, as to all branches of the military, that the Debtor(s) are persons currently on active duty.

December 18, 2007

By  /s/ Heather L. Deere_____
 Heather L. Deere
355 Union Blvd., Suite 302
Lakewood, CO 80228
(303) 274-0155

State of Colorado       )
                     ) ss.
County of JEFFERSON    )

The foregoing was subscribed and sworn to before me on December 18, 2007.

Witness my hand and official seal.

By  /s/ Theresa Scherenberg_____
Theresa Scherenberg
Notary Public, State of Colorado
My Commission Expires:  12/18/2010
 (Original Signature and Seal on File)

07-053-07464

127814

13/606 ③

After Recording Return To:

CHERRY CREEK MORTGAGE CO., INC.
7600 EAST ORCHARD ROAD, #250N
GREENWOOD VILLAGE, COLORADO 80111

———————————————— [Space Above This Line For Recording Data] ————————————————

Loan Number 07900424
MIN# 100030200079004246

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 9, 11, 16, and 18. Certain rules regarding the usage of words used in this document are also provided in Section 27.

**(A) "Security Instrument"** means this document, which is dated **APRIL 14, 2004**, together with all Riders to this document.

**(B) "Borrower"** is **NATHAN LUJAN**. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **CHERRY CREEK MORTGAGE CO., INC.**. Lender is a CORPORATION organized and existing under the laws of **COLORADO**. Lender's address is **7600 EAST ORCHARD ROAD, #250N, GREENWOOD VILLAGE, COLORADO 80111.**

**(D) "Trustee"** is the Public Trustee of **EAGLE** County, Colorado.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **APRIL 14, 2004**. The Note states that Borrower owes Lender **TWENTY-SEVEN THOUSAND FOUR HUNDRED AND 00/100ths** Dollars (U.S.$27,400.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2019.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials ___

GMD COLORADO Junior Lien DOT - HC Form 33628.2  05/17/02
© 2002 Guardian Mortgage Documents, Inc.

*(page 1 of 13 pages)*

ES19585B04



874115
Page: 1 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO    159    R 66.00    D 0.00

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for principal and interest under the Note, plus any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor In Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender the repayment of the Loan, and all renewals, extensions and modifications of the Note. This Security Instrument also secures to Lender the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ County _____ of _____ **EAGLE** _____ :

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

GMD COLORADO Junior Lien DOT - HC Form 33628.2  05/17/02

Borrower Initials _____

*(page 2 of 13 pages)*

PARCEL 3, RESUBDIVISION OF LOT 18, BLOCK 3, KAIBAB PARK, ACCORDING TO THE PLAT RECORDED JUNE 13, 1985 IN BOOK 417 AT PAGE 180, COUNTY OF EAGLE, STATE OF COLORADO.

which currently has the address of **491 WHITING RD**

  [Street]

**EAGLE**                              , Colorado      **81631**              ("Property Address"):
           [City]                    [State]       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

BORROWER AND LENDER covenant and agree as follows:

**1. Payment of Principal, Interest and Other Charges.** Borrower must pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower must also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or



Borrower Initials

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02                           *(page 3 of 13 pages)*

partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments.** Unless Applicable Law provides otherwise, all payments received by Lender under the Note and Section 1 will be applied by Lender as permitted under the Note.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for "Escrow Items." "Escrow Items" can include taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, leasehold payments or ground rents on the Property, if any, premiums for any and all insurance required by Lender under Section 5, and Mortgage Insurance premiums, if any. At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.

Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3. However, Borrower shall not be obligated to make these payments to Lender to the extent that Borrower makes these payments to the holder of a prior mortgage or deed of trust on the Property if such holder is an institutional lender.

Borrower's obligation to pay the amounts due for Escrow Items and to provide receipts for Escrow Items shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is

GMD COLORADO Junior Lien DOT - HC Form 33628.2  05/17/02

Borrower Initials 

*(page 4 of 13 pages)*

made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Prior Security Instruments; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security instruments with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property that may attain priority over this Security Instrument, and leasehold payments or ground rents, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3. Upon Lender's request, Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section and receipts evidencing any such payments Borrower makes directly. Borrower shall promptly discharge any lien (other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained) that has priority over this Security Instrument.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including earthquakes and floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts, including deductible levels, and for the periods that Lender requires. Borrower may choose any insurer reasonably acceptable to Lender. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower. Insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. If Lender requires, Borrower shall promptly give Lender all receipts of paid premiums and renewal notices.

If Borrower fails to maintain coverage as required in this Section, Borrower authorizes Lender to obtain such coverage, at Borrower's expense, as Lender in Lender's sole discretion determines appropriate to protect Lender's interest in the Property in accordance with the provisions of Section 7. Borrower understands and agrees that any coverage Lender purchases may cover only Lender's interest in the Property and might provide greater or lesser coverage than was previously in effect. Insurance coverage purchased by the Lender might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability. Borrower also understands and agrees that the premium for any such insurance may be higher than the premium Borrower could have paid for such insurance. Any amounts disbursed by Lender to purchase insurance coverage under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02

Borrower Initials _____

*(page 5 of 13 pages)*

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any Person with a superior Lien on the Property, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. Subject to the rights of any Person with a superior Lien on the Property, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 19 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Borrower shall not permit any condition to exist on the Property that would, in any way, invalidate the insurance coverage on the Property.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or impair the Property. Borrower shall not allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If this Security Instrument is on a leasehold, Borrower shall comply with the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), or Borrower abandons the Property,

Borrower Initials _____

GMD COLORADO Junior Lien DOT - HC Form 33628.2  05/17/02

*(page 6 of 13 pages)*

then Lender may do, and pay for, anything necessary to protect the Property's value and Lender's rights in the Property. Lender may pay any sums secured by a lien that has priority over this Security Instrument or any advance under the Note or this Security Instrument. Lender may appear in court and pay reasonable attorneys' fees. Lender may pay any sums Borrower is required to pay under this Security Instrument. Lender may enter on the Property to make repairs or to secure the Property. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 7, Lender does not have to do so and is not under any duty or obligation to do so. Borrower agrees that Lender incurs no liability for not taking any or all actions authorized under this Section 7.

Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If Lender required Mortgage Insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**9. Assignments of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, and subject to the rights of any Person with a superior Lien on the Property, the Lender shall apply the Miscellaneous Proceeds to restore or repair the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold the Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender shall promptly undertake any such inspection. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any Person with a superior Lien on the Property, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a partial or total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restore or repair the Property or to pay the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.



Borrower Initials

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02

*(page 7 of 13 pages)*

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release Borrower's liability or the liability of any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by Borrower or any Successor in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from a third person, entity or Successor in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.

Anyone who co-signs this Security Instrument but does not execute the Note (a "Co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Note, but is obligated to pay all other sums secured by this Security Instrument; and (c) agrees that Lender and anyone else who signs this Security Instrument may agree to extend, modify, forbear or make any accommodations regarding the terms of this Security Instrument or the Note without the Co-signer's consent.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. In regard to any other fees, the fact that this Security Instrument does not anticipate and expressly authorize the Lender to charge a specific fee to Borrower shall not be construed to prohibit Lender from charging the Borrower such a fee.

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit. Lender must refund any sums already collected from Borrower that exceed permitted limits. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note and will not affect the amount of the Periodic Payment.

Borrower Initials _____

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02

*(page 8 of 13 pages)*

**874115**
Page: 8 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO    159    R 66.00    D 0.00

**13. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Subject to Applicable Law, any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. The Borrower's notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.

Subject to Applicable Law, any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.

**14. Governing Law; Severability.** This Security Instrument is governed by federal law and the law of Colorado. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Transfer of the Property.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender shall not exercise this option if Applicable Law prohibits such action.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**16. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change as required by Applicable Law.

Borrower Initials _____

GMD COLORADO Junior Lien DOT - HC Form 33628.2  05/17/02

*(page 9 of 13 pages)*



874115
Page: 9 of 13
04/19/2004 11:41a
Teak J Simonton Eagle, CO    159    R 66.00    D 0.00

**17. Notice of Grievance.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 19 and the notice of acceleration given to Borrower pursuant to Section 15 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17.

**18. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns or is notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. Borrower shall promptly give Lender written notice of any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance. Borrower shall promptly give Lender written notice of any condition caused by the presence, use or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

As used in this Security Instrument, "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Security Instrument, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection. As used in this Security Instrument, "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law.

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 15 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense Borrower may have to acceleration and sale (if such

Borrower Initials  _____

874115
Page: 10 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO    159    R 88.00    D 0.00

rights exist under Applicable Law.) If the default is not cured on or before the date specified in the notice, Lender may, at Lender's option, require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 19, including, but not limited to, reasonable attorneys' fees as permitted by Applicable Law, and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or the Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Either Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, as set forth above; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

20. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

21. Substitute Trustee. Lender may, at Lender's option, from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original lender, Trustee and borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. Discontinuance of Enforcement. Notwithstanding acceleration of the sums secured by this Security Instrument under the provisions of Section 15 or Section 19, Lender may, in Lender's sole discretion and upon such conditions as Lender in Lender's sole discretion may determine, discontinue any proceedings begun to enforce the terms of this Security Instrument.


874115
Page: 11 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO    159    R 66.00    D 0.00

**23. No Waiver.** No waiver by Lender at any time of any term, provision or covenant contained in this Security Instrument or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**24. Additional Charges.** Borrower agrees to pay reasonable charges as allowed by Applicable Law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this Section is intended to create and shall not be construed to create any duty or obligation by Lender to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Security Instrument upon full repayment of all sums secured thereby.

**25. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**26. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**27. Rules of Construction.** As used in this Security Instrument, words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender. Words in the singular shall mean and include the plural and vice versa. The word "may" gives sole discretion without any obligation to take any action.

**28. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**29. Riders to this Security Instrument.** If one or more Riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such Rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the Rider(s) were a part of this Security Instrument.

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

**874115**
Page: 12 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO       189       R 66.00       D 0.00

Borrower Initials _____    _____

*(page 12 of 13 pages)*

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02



IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                    NATHAN LUJAN                -Borrower

_____     _____ (Seal)
                                                                -Borrower

STATE OF COLORADO
                                    ss.
County of EAGLE

    The foregoing instrument was acknowledged before me this _____14_____ day of
_____April_____, 2004, by NATHAN LUJAN

Witness my hand and official seal.

_____
Title of Officer

My Commission expires:

EILEEN DUKE
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 5/28/2007

**874115**
Page: 13 of 13
04/19/2004 11:41A
Teak J Simonton Eagle, CO        159        R B6.00        D 0.00

GMD COLORADO Junior Lien DOT - HC Form 33628.2 05/17/02          *(page 13 of 13 pages)*

Loan Number 079004244

# NOTE

MIN# 100030200079004246

| APRIL 14 | , 2004 | EAGLE | , COLORADO |
|---|---|---|---|
| [Date] | | [City] | [State] |

491 WHITING RD, EAGLE, COLORADO  81631

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay **TWENTY-SEVEN THOUSAND FOUR HUNDRED AND  00/100ths** Dollars (U.S. **$27,400.00**) (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CHERRY CREEK MORTGAGE CO., INC..** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.8750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **JUNE 1, 2004.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **MAY 1, 2019**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **7600 EAST ORCHARD ROAD, #250N, GREENWOOD VILLAGE, COLORADO  80111** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$180.00.**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Borrower Initials

GMD COLORADO Junior Lien Fixed Rate Note  HC 33509  03/2002

*(page 1 of 2 pages)*

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender shall not exercise this option if Applicable Law prohibits such action.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
NATHAN LUJAN                                        -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

*[Sign Original Only]*

GMD COLORADO Junior Lien Fixed Rate Note  HC 33509  03/2002                    *(page 2 of 2 pages)*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br>NATHAN E. LUJAN<br><br>   Debtor(s).<br>_____<br>WILSHIRE CREDIT CORPORATION AS<br>SERVICER FOR THE BANK OF NEW<br>YORK, AS SUCCESSOR TRUSTEE TO<br>JPMORGAN CHASE BANK, NATIONAL<br>ASSOCIATION, FKA JPMORGAN CHASE<br>BANK, AS ORIGINAL TRUSTEE FOR THE<br>HOME EQUITY TRUST SERIES 2004-4,<br><br>    Movant,<br> vs.<br><br>NATHAN E. LUJAN<br> and<br>Simon E. Rodriguez, Chapter 7 Trustee,<br><br>    Respondents. | ) CASE NO.  05-39712 HRT<br>)<br>)<br>)<br>) CHAPTER 7<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### NOTICE OF HEARING OR PRELIMINARY HEARING

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay, a copy of which is herewith served on you, has been filed with this Court.  A hearing on the motion has been set for January 15, 2008, at 1:30 P.M., in Courtroom B, located at 721 Nineteenth Street, Denver, Colorado 80202-2508.  The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 401.

If you desire to oppose this Motion, you are required to file with this Court and serve upon Heather L. Deere, attorney, whose address is Law Office of Michael P. Medved, P.C., 355 Union Blvd., Suite 302, Lakewood, CO 80228, a written response to the motion on or before five court days prior to the date of the hearing.

**If you fail to file a response, an order granting the relief requested will be granted without further notice to you.**

Dated:  12/18/2007

LAW OFFICE OF MICHAEL P. MEDVED, P.C.

By  /s/ Heather L. Deere_____
Heather L. Deere, #28597
355 Union Blvd., Suite 302
Lakewood, CO 80228
(303) 274-0155

ATTORNEY FOR MOVANT:
WILSHIRE CREDIT CORPORATION AS SERVICER
FOR THE BANK OF NEW YORK, AS SUCCESSOR
TRUSTEE TO JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, FKA JPMORGAN CHASE BANK, AS
ORIGINAL TRUSTEE FOR THE HOME EQUITY
TRUST SERIES 2004-4

07-053-07464

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

**IN RE:**                                    )
NATHAN E. LUJAN                               )   **CASE NO.  05-39712 HRT**
                                              )
Debtor(s).                                    )
                                              )
_____              )
WILSHIRE CREDIT CORPORATION AS                )   **CHAPTER 7**
SERVICER FOR THE BANK OF NEW                  )
YORK, AS SUCCESSOR TRUSTEE TO                 )
JPMORGAN CHASE BANK, NATIONAL                 )
ASSOCIATION, FKA JPMORGAN CHASE               )
BANK, AS ORIGINAL TRUSTEE FOR THE             )
HOME EQUITY TRUST SERIES 2004-4,              )
                                              )
Movant,                                       )
       vs.                                    )
                                              )
NATHAN E. LUJAN                               )
 and                                          )
Simon E. Rodriguez, Chapter 7 Trustee,        )
                    Respondents.              )

## CERTIFICATE OF SERVICE

I hereby certify that on this __19th__ day of___December___, 2007, true and correct copies of the following **MOTION FOR RELIEF FROM STAY** and **NOTICE OF HEARING OR PRELIMINARY HEARING** were placed in the U.S. Mail, postage prepaid, addressed to:

William Evans
Attorney for Debtor
1780 S. Bellaire St., Suite 828
Denver, CO 80222

Simon E. Rodriguez
Chapter 7 Trustee
P.O. Box 36324
Denver, CO 80236

NATHAN E. LUJAN
491 WHITING ROAD
EAGLE, CO 81631

/s/ Heather L. Deere
_____
Heather L. Deere

07-053-07464